IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| McGOWEN PRECISION BARRELS, LLC, | CV 22-39-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| PROOF RESEARCH, INC., | |
| Defendant. | |

Defendant Proof Research, Inc. ("Proof") moves to dismiss Plaintiff McGowen Precision Barrels, LLC's ("McGowen") Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant's motion is granted in part and denied in part for the reasons discussed below.

## I.    Background[1]

Since 2007, McGowen has manufactured steel firearm barrels and barrel blanks, or liners, which its customers wrap with a continuous-filament carbon fiber

---

[1] Consistent with the legal standards applicable to Rule 12(b)(6) motions, the following facts are taken from the Complaint, evidence on which the Complaint necessarily relies, and court documents of which this Court may take judicial notice.

and epoxy resin composite. (Doc. 1, ¶¶ 5–6, 8; Doc. 15-2, 12). In 2016, when the dispute underlying this litigation commenced, McGowen's customers included McGowen's sister company, Carbon Six Barrels, LLC ("Carbon Six"), Fierce Firearms, LLC, and Primary Weapons Systems, Inc. McGowen states in its Complaint that Primary Weapons Systems "no longer purchases barrel blanks from McGowen." (Doc. 1, ¶¶ 8, 28–29).

Proof began making helically wound and ground carbon fiber rifle barrels through its predecessor in interest, Advanced Barrel Systems ("ABS") in 2003. (Doc. 15-2, 26). Proof applied to register its "mottled pattern" trade dress ("Mark") with the United States Patent and Trademark Office ("USPTO") in May 2012. (Doc. 1, ¶ 9). The USPTO initially refused to register the Mark, noting it "consisted of nondistinctive features of a product design that is not registrable on the Principal Register without sufficient proof of acquired distinctiveness." (Doc. 1, ¶ 15). In an email discussing this initial refusal, Proof's attorney advised its CEO that if the finish of the barrel was a natural consequence of the manufacturing process, then Proof could not get a trademark. (Doc. 1, ¶ 16). Three days later, Proof responded to the USPTO by asserting that "nothing in the . . . underlying technology dictates the appearance of the Mark on gun barrels . . . namely, the

unique irregular, mottled, rippled patches on the finished barrel." (Doc. 1, ¶ 17).
On August 27, 2013, the USPTO registered the Mark. (Doc. 1, ¶ 9; Doc. 15-1, 1).

On June 2, 2016, Proof sent cease-and-desist letters to Carbon Six and
Primary Weapons Systems, informing the companies of its Mark and demanding
the companies "cease and desist from selling, distributing, advertising, or
promoting barrels, or rifles fitted with barrels, having a ground carbon fiber
composite winding finish" with Proof's "distinctive trade dress." (Doc. 1, ¶¶ 26,
28; Docs. 15-3, 15-4). Proof had sent a similar letter to Fierce Firearms on
February 9, 2015. (Doc. 1, ¶ 28; Doc. 15-5).

On June 10, 2016, Carbon Six responded with a letter, stating, "We strongly
believe that once the facts are brought to light, Proof Research's Registration No.
4,390,533 will be cancelled," and "we do not believe that any action on our part is
necessary." (Doc. 1, ¶ 30; Doc. 15-6). The letter also noted:

> Please be advised that carbonsix has not sold any of the barrels
> at issue, to date. Additionally, carbonsix is developing a line of
> carbon fiber wrapped rifle barrels that are significantly different
> in appearance from the barrels at issue. So, while carbonsix
> strongly believes that it has not infringed any valid trade dress
> rights, the issue is likely to be moot in the near future.

On December 15, 2017, Proof filed a complaint in this district court, alleging
trademark infringement, unfair competition, and trademark dilution under the
Lanham Act. (Doc. 1, ¶ 10; *Proof Research, Inc. v. McGowen Precision Barrels,*

*LLC*, No. 9:17-cv-00173-DLC (D. Mont. 2017) ("*Proof I*")). On December 22, 2017, McGowen filed a Petition for Cancellation of the Mark with the USPTO Trademark Trial and Appeal Board ("TTAB"), asserting five grounds for cancellation: the Mark comprised matter that is functional; the Mark represented multiple marks; the trade dress was generic; the trade dress was aesthetically functional; and Proof committed fraud in the procurement of its registration under § 14 of the Lanham Act, 15 U.S.C. § 1064. (Doc. 1, ¶ 11). On January 16, 2018, the parties agreed to stay the federal lawsuit pending the outcome of the TTAB proceeding. (Doc. 1, ¶ 12; *Proof I*, Doc. 7).

On August 30, 2018, while cancellation proceedings were ongoing in front of the TTAB, Proof applied to renew the Mark's registration. (Doc. 1, ¶ 32). In its application, Proof's counsel declared that no proceedings involving the rights of the subject registration were pending in the USPTO or in a court. (Doc. 1, ¶ 32). On September 13, 2018, the USPTO issued a Notice stating Proof's trademark registration of the Mark would remain in force. (Doc. 1, ¶ 33). Proof amended its application on October 31, 2020. (Doc. 1, ¶ 36).

After extensive evidence and testimony, on May 20, 2021, the TTAB canceled Proof's registration on the grounds of functionality, finding "the trade dress comprising the mark in the Registration is, as a whole, functional under

Section 2(e)(5) of the Trademark Act, 15 U.S.C. § 1052(e)(5)," and declining to rule on McGowen's remaining claims. (Doc. 15-2, 4). On August 3, 2021, Proof filed a Notice of Voluntary Dismissal of the federal litigation under Fed. R. Civ. P. 41(a)(1)(A)(i). (Doc. 1, ¶ 37; *Proof I*, Doc. 26). The same day, McGowen filed a motion to deny the dismissal, asking the court to allow it 21 days to file an answer and counterclaim. (Doc. 1, ¶ 38; *Proof I*, Doc. 30). The court denied McGowen's motion, finding the stay imposed during the pendency of the TTAB proceeding did not extinguish Proof's absolute right to voluntarily dismiss the action prior to service by the defendant of an answer or a motion for summary judgment under Rule 41. (Doc. 1, ¶ 39; *Proof I*, Doc. 32).

On February 10, 2022, McGowen filed this action, alleging Count I: False or Fraudulent Registration of a Trademark under the Lanham Act § 38, 15 U.S.C. § 1120; Count II: Malicious Prosecution; and Count III: Tortious Interference with Business Relations/Prospective Economic Advantage. (Doc. 1). On April 6, 2022, Proof filed the instant motion to dismiss, arguing McGowen's Lanham Act claim was insufficiently pled, its fraud and tort claims are untimely, and its malicious prosecution claim is legally insufficient. (Doc. 15). McGowen opposes the motion.

## II.    <u>**Legal Standard**</u>

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper under Rule 12(b)(6) only when the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations in the complaint as true and construes the pleading in the light most favorable to the nonmoving party. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

Dismissal under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must contain sufficient facts "to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Plausibility is context-specific, requiring courts to draw on judicial experience and common sense when evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th

6

Cir. 2014). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Generally, a district court may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). When matters outside the pleadings are considered, the motion to dismiss under Rule 12(b)(6) is treated as one for summary judgment under Rule 56. *Khoja*, 899 F.3d at 998; *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 921–22 (9th Cir. 2004).

There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. *Khoja*, 899 F.3d at 998 (explaining the two exceptions). The incorporation-by-reference doctrine allows a court to consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the

plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may take judicial notice of undisputed "matters of public record" including other state or federal court proceedings. *Lee*, 250 F.3d at 688–89; *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995).

The parties attached extensive documentation from the TTAB proceeding to their briefing. Because neither party questioned the authenticity of the copy, the Court will consider the evidence referenced in and central to the Complaint when assessing its sufficiency under the standards applicable to a motion to dismiss.

## III.   <u>Discussion</u>

### A. Lanham Act § 38

The Lanham Act creates civil liability for false or fraudulent trademark registration. *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1395 (9th Cir. 1993). Section 38 of the Lanham Act provides:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120. While the Ninth Circuit has not addressed the issue, the Eighth Circuit has defined damages "in consequence thereof" in the context of 15 U.S.C.

8

§ 1120 as those "resulting from the use of the 'mark' while falsely registered, and not an injury resulting from the false declaration solely." *Landstrom v. Thorpe*, 189 F.2d 46, 50 (8th Cir. 1951)).

Proof makes two arguments related to McGowen's Lanham Act claim. First, Proof argues McGowen has not met the Rule 9(b) burden for alleging fraud in a trademark action because it failed to articulate with specificity the damages incurred "in consequence of" Proof's allegedly fraudulent registration. McGowen counters the facts alleged are sufficient to survive a motion to dismiss because its allegations, which must be accepted as true, specifically allege the "who, what, where, when, and how" of Proof's untrue statements in furtherance of the Mark's registration and renewal.

Second, Proof asserts that McGowen's fraud claim is untimely because it accrued when the Mark was registered in 2013 and was not brought within Montana's two-year statute of limitations. McGowen argues its claim did not accrue until Proof's June 2, 2016 cease-and-desist letter, which is when it "discovered the facts constituting the fraud," and further asserts the statute of limitations should be equitably tolled during the TTAB proceedings or laches should apply. Because the Court finds McGowen's fraud claim is time barred, it need not address the issue of whether McGowen has satisfied its Rule 9(b) burden.

Although the Lanham Act contains no express statute of limitations, the Montana Supreme Court "generally presume[s] that Congress intended to 'borrow' the limitations period from the most closely analogous action under state law." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002) (citations omitted). As a claim under § 38 of the Lanham Act sounds in fraud, it is subject to Montana's two-year statute of limitations. Mont. Code Ann. § 27-2-203; *see Driscoll v. Singing Tree Farms, Inc.*, No. CV 13-37-BU-DLC, 2015 U.S. Dist. LEXIS 16659, at *6 n.2 (D. Mont. Feb. 11, 2015) (citing *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1140 (9th Cir. 2010) (holding Arizona's three-year statute of limitations for fraud to claims under the Lanham Act § 32, 15 U.S.C. § 1114); *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1395 (9th Cir. 1993) (applying Oregon's two-year limitation period for fraud claim under the Lanham Act § 43, 15 U.S.C. § 1125); *3BA Props. LLC v. Claunch*, No. C13-979 TSZ, 2014 WL 2619070, at *8 (W.D. Wash. June 12, 2014) (applying Washington's three-year limitation period to Lanham Act § 38 fraud claim); *Lurzer GMBH v. American Showcase, Inc.*, 73 F. Supp. 2d 327, 330 (S.D.N.Y. 1998) (applying New York's six-year statute of limitations for fraud to a Lanham Act § 38 fraudulent trademark registration claim).

Montana's statute of limitations for relief on the ground of fraud does not accrue "until the discovery by the aggrieved party of the facts constituting the fraud." Mont. Code Ann. § 27-2-203. For a claim to accrue, "actual or complete knowledge of the facts constituting the claim" is not required; "if the injured party has received notice of a possible claim and failed to act diligently in pursuing the claim, the claim may be time-barred." *Norbeck v. Flathead Cnty.*, 438 P.3d 811, 817 (Mont. 2019).

While Proof argues the fraud claim in this case may have accrued as early as August 2013, which is the date the Mark's registration was procured, it is undisputed that, at the very least, McGowen had notice of the facts constituting its claim in June 2016 when CarbonSix received Proof's cease-and-desist letter and McGowen's legal counsel responded, stating Proof's allegedly false representations to the USPTO may "give rise to a counterclaim for unfair trade practices, damages and attorney fees." (Doc. 15-6, 3). Thus, it is apparent that the two-year time limit for bringing the Lanham Act fraud claim has expired under either accrual date.

McGowen argues equitable tolling should apply to save its fraud claim because it reasonably and in good faith pursued its claims in front of the TTAB, and the cancellation proceedings provided Proof with adequate notice of the fraud

claim against it. Alternatively, McGowen contends laches should apply because its delay was justified, and Proof has suffered no prejudice as a result of its delay.

### 1. Equitable Tolling

The policy behind the doctrine of equitable tolling is to allow good faith litigants their day in court. *Brilz v. Metro. Gen. Ins. Co.*, 285 P.3d 494, 499 (Mont. 2012). Courts apply the doctrine of equitable tolling to excuse strict compliance with categorical time bars "when the plaintiff is actually prevented from filing on time despite exercising that level of diligence which could reasonably be expected in the circumstances." *Schoof v. Nesbit*, 316 P.3d 831, 840 (Mont. 2014). Thus, "[e]quity ensures just results in exceptional circumstances." *BNSF Ry. Co. v. Cringle*, 281 P.3d 203, 208 (Mont. 2012) (J. Morris, specially concurring).

Under Montana's three-part test for equitable tolling, a statute of limitations may be tolled when a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria: (1) timely notice to the defendant within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim. *Schoof*, 316 P.3d at 840 (quoting *Lozeau v. GEICO Indem. Co.*, 207 P.3d 316, 319 (Mont. 2009)). The party invoking equitable tolling must show

"a reasonable and good faith pursuit of one of several possible remedies and then demonstrate the three criteria listed above have been satisfied." *Lozeau*, 207 P.3d at 319.

The Montana Supreme Court has rejected a one-size-fits-all approach to the doctrine of equitable tolling when such an approach would serve no policy purpose. *Weidow v. Uninsured Employers' Fund*, 246 P.3d 704, 709 (Mont. 2010). For purposes of tolling the statute of limitations in an action for fraud or unfair trade practices, the aggrieved party must exercise ordinary diligence in the discovery of the facts constituting the fraud or deceptive practice. *Osterman v. Sears*, 80 P.3d 435, 441 (Mont. 2003). The equitable tolling doctrine is not appropriate in cases in which the litigant has failed to meet a deadline as a result of "garden variety" neglect. *Weidow*, 246 P.3d at 709; *Washington v. Garrett*, 10 F.3d 1421, 1437 (9th Cir. 1993).

McGowen contends its claim is timely under a tolled statute of limitations because "McGowen filed this lawsuit less than one year after the cancellation had been granted and less than six months since the Trademark Litigation was dismissed." McGowen asks this Court to equitably toll the statute of limitations on its fraud claim from December 22, 2017, the date it filed the petition to cancel the Mark, until either May 20, 2021, the date of the TTAB's functionality

determination, or December 14, 2021, when the USPTO officially canceled the Mark. The Court notes that only under the second timeline would equitable tolling save its claim.

Proof maintains McGowen has not demonstrated "good faith and reasonable conduct" by filing this second action for damages after already obtaining the relief it sought in its chosen forum. Proof asserts prejudice from the second action, which would force Proof to litigate substantially similar claims after incurring more than three years of costs and fees defending its Mark in the cancellation proceedings.

The Court agrees McGowen has not shown it is entitled to equitable tolling in this case because it has not established that its action in front of the TTAB was a reasonable alternative for the relief it is now requesting from this Court. As Proof asserts, McGowen's choice to pursue cancellation in the TTAB as opposed to the district court came with well-known consequences.

First, the TTAB has no power to award damages for fraud. *Rhoades v. Avon Prods.*, 504 F.3d 1151, 1158 n.6 (9th Cir. 2007) ("The powers of the TTAB are limited to determin[ing] and decid[ing] the respective rights of [trademark] registration.") (citing 15 U.S.C. §§ 1067(a), 1063(a), 1064). Conversely, a federal district court may determine registration rights, 15 U.S.C. § 1119; hear actions for

trademark infringement, 15 U.S.C. § 1114; and grant injunctive relief and award damages, 15 U.S.C. §§ 1116–17. *Rhoades*, 504 F.3d at 1158 n.6.

Second, the TTAB has "discretion to decide only those claims necessary to enter judgment and dispose of the case," as its "determination of registrability does not require, in every instance, [a] decision on every pleaded claim." *Yazhong Investing Ltd. v. Multi-Media Tech. Ventures, Ltd.*, 126 USPQ2d 1526, 1540 n.52 (TTAB 2018) (quoting *Multisorb Techs., Inc. v. Pactiv Corp.*, 109 USPQ2d 1170, 1171 (TTAB 2013)).

In *Rhoades*, the Ninth Circuit held the Plaintiffs were not required to wait for related TTAB proceedings to end before seeking declaratory relief in federal court. 504 F.3d at 1154. The court viewed deferring to a TTAB action, which can neither be injunctive nor provide damages, as doubly "less attractive" in such a case because an infringement claim often presents inherent urgency where "[o]nging business conduct is likely to be involved and harm, possibly irreparable, may be accruing." *Rhoades*, 504 F.3d at 1163 (quoting *PHC v. Pioneer Healthcare*, 75 F.3d 75, 80 (1st Cir. 1996)).

The Ninth Circuit's reasoning in *Rhoades* is persuasive here. The timeline of this case, including the well-established consequences of pursuing a result in front of the TTAB, establish that McGowen was not the victim of exceptional

circumstances; rather, this is a case in which the litigant has failed to meet a deadline as a result of "garden variety" neglect. *Weidow*, 246 P.3d at 709; *Washington*, 10 F.3d at 1437. In January 2018, prior to McGowen filing an answer or a motion for summary judgment, the parties jointly filed for a stay of the federal proceedings in *Proof I* pending a decision by the TTAB. The TTAB handed down its decision invalidating the Mark and only addressing the issue of functionality in May 2021. For months after the TTAB's favorable ruling, the ball was in McGowen's court, yet McGowen waited almost nine months to file this lawsuit. McGowen has presented no argument that exceptional circumstances actually prevented it from timely filing an answer and counter claims or a motion for summary judgment in *Proof I*. Even after the district court dismissed *Proof I* without prejudice in August, McGowen allowed more than six months to pass before asserting its fraud claim in the present action.

Under the circumstances, McGowen's failure assert its federal claims until February 2022 belies its equitable tolling argument. McGowen has failed to establish that tolling the statute of limitations for bringing its Lanham Act claim in this case would be equitable.

16

### 2.  Laches

Laches is an equitable time limitation on a party's right to bring suit, which is distinct from the statute of limitations, "a creature of law." *Jarrow Formulas*, 304 F.3d at 835. The doctrine of laches stems from the maxim that "those who sleep on their rights, lose them." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999); *see Jarrow Formulas*, 304 F.3d at 838 ("laches penalizes inexcusable dilatory behavior"). As an equitable affirmative defense, laches requires the party asserting it to show that (1) the plaintiff's delay in filing suit was unreasonable, and (2) the defendant would suffer prejudice caused by the delay if the suit were to continue. *Au-Tomotive Gold*, 603 F.3d at 1139 (citing *Jarrow Formulas*, 304 F.3d at 838). A party asserting laches must provide evidence, more than conclusory statements, to prove prejudice. *Teton Coop. Reservoir Co.*, 414 P.3d 1249, 1258 (Mont. 2018) (citing *Anderson v. Stokes*, 163 P.3d 1273, 1280 (Mont. 2007)).

The Ninth Circuit has applied laches, rather than statutes of limitation, to bar or permit Lanham Act claims, particularly where a plaintiff's recovery is "subject to the principles of equity" as provided in 15 U.S.C. §§ 1115–17 and 1125. *See Jarrow Formulas*, 304 F. 3d 829 (applying laches to bar untimely claims for false and misleading advertising under § 43(a)(1)(B) of the Lanham Act); *Au-Tomotive*

*Gold*, 603 F.3d 1133 (holding an infringement claim under the Lanham Act § 32(1) was not barred by laches when brought within the state's analogous limitation period for fraud). The Court is unaware of any cases where a laches analysis was applied to a claim brought under § 38 of the Lanham Act, which does not expressly provide for equitable recovery.

Nevertheless, even under a laches analysis, a state's analogous statute of limitations is relevant and begins to run "from the time the plaintiff knew or should have known" about his cause of action. *Jarrow Formulas*, 304 F.3d at 838. If the plaintiff's claim is filed within the analogous limitations period, the strong presumption is that laches is inapplicable; but if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit. *Jarrow Formulas*, 304 F.3d at 837; *Au-Tomotive Gold*, 603 F.3d at 1139–40.

McGowen urges the Court to apply the doctrine of laches to its fraud claim instead of Montana's two-year statute of limitations, arguing (1) its delay was justified while it pursued cancellation in the TTAB, and (2) Proof has suffered no prejudice as a result of that delay—since one of McGowen's grounds for cancellation was an assertion of the Mark's fraudulent procurement, McGowen argues "Proof cannot claim now it was not on notice of the claim or that it would have taken any different actions."

18

McGowen first alleged Proof fraudulently obtained its trademark registration in June 2016 and filed this claim in February 2022, more than five years later. Because the Court finds Montana's two-year statute of limitations for fraud is the most analogous limitation period for McGowen's claim, laches is a presumptive bar to suit. McGowen, as the party seeking protection from dismissal under a theory of laches, has not met its burden to overcome this presumption. McGowen's five-year delay was more than double the time available to bring a claim for fraud under Montana's analogous limitations period, and as discussed above, McGowen has not shown this delay was reasonable. Further, McGowen's conclusory statement that asserting fraud as one of its grounds for cancellation provided adequate notice is insufficient to show Proof would not suffer any prejudice caused by the delay should the suit continue.

Accordingly, McGowen's laches argument fails and Proof's motion to dismiss Count I is granted.

### B. Malicious Prosecution

To state a claim in a civil action for malicious prosecution in Montana, the plaintiff must plead the following six elements:

> (1) a judicial proceeding was commenced and prosecuted against the plaintiff;
> (2) the defendant was responsible for instigating, prosecuting or continuing such proceeding;

(3) there was a lack of probable cause for the defendant's acts;
(4) the defendant was actuated by malice;
(5) the judicial proceeding terminated favorably for the plaintiff; and
(6) the plaintiff suffered damage.

*Hughes v. Lynch*, 164 P.3d 913, 917 (Mont. 2007).

Proof argues McGowen's malicious prosecution claim is insufficient because McGowen cannot establish the litigation at issue was "prosecuted," and further contends McGowen has not provided any evidence that Proof lacked probable cause or acted with malice.

The Court finds that under the appropriate Rule 12(b) standards, McGowen has alleged sufficient evidence for its malicious prosecution claim to survive this motion to dismiss.

### 1. Commenced and Prosecuted

The Montana Supreme Court has not defined the terms "commenced" or "prosecuted" in the context of a civil malicious prosecution claim. Black's Law Dictionary defines "commencement of an action" as "[t]he time at which judicial or administrative proceedings begin, typically with the filing of a formal complaint," and to "prosecute" as to "commence and carry out (a legal action)." *Commencement of an action* and *Prosecute*, Black's Law Dictionary (11th ed. 2019).

Here, there is no dispute that Proof commenced a judicial proceeding against McGowen when it filed its complaint in the federal district court. Proof takes issue

with the second part of Montana's first element, which requires the judicial proceeding to not just have been "commenced," but also "prosecuted." Proof argues the federal litigation was never "prosecuted" because Proof voluntarily dismissed the case before McGowen responded with an answer. McGowen counters that Proof grossly understates the record in the district court, which contains 32 entries over three years, including proof of service and McGowen's appearance, a joint motion to stay, seven joint status reports filed with numerous exhibits, and various other orders from the court.

Montana analyzes both civil and criminal malicious prosecution claims under the state's common law, which has never conclusively established the precise point at which a civil action is deemed "prosecuted." McGowen points to the Montana Supreme Court's decision in *Plouffe v. Mont. Dep't of Pub. Health & Human Servs.*, 45 P.3d 10 (Mont. 2002), where the State initiated an enforcement action against Plouffe alleging various health and safety violations at his resort and then voluntarily dismissed the lawsuit after settlement negotiations failed. The court held *Plouffe* had sufficiently alleged all elements of a malicious prosecution claim, including that a judicial proceeding was commenced and "prosecuted" against him. *See Plouffe*, 45 P.3d at 19; *see also Saner v. Bowker*, 222 P. 1056 (Mont. 1924) (affirming a jury verdict in favor of the plaintiff on his malicious

prosecution claim even though the underlying criminal action was never prosecuted because the plaintiff had paid the arresting officer the full amount of his alleged debt at the time of his arrest).

The Court concludes that under Montana precedent, the extent of the federal litigation in this case satisfies the "commenced and prosecuted" element in pleading a civil malicious prosecution claim. First, Proof "commenced" the judicial proceeding when it filed its complaint against McGowen. Second, Proof "prosecuted" the judicial proceeding by serving McGowen and continuing to maintain the litigation over the period of the stay.

### 2. Probable Cause

Lack of probable cause is the gist of an action for malicious prosecution. *Plouffe*, 45 P.3d at 15 (citing *McGuire v. Armitage*, 603 P.2d 253, 255 (Mont. 1979), *overruled on other grounds by Ammondson v. Nw. Corp.*, 220 P.3d 1 (Mont. 2009)). The Montana Supreme Court has adopted the following definition for probable cause in the context of a civil suit for malicious prosecution:

> One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either
>
> > (a) correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or

> (b) believes to this effect in reliance upon the advice of
> counsel, sought in good faith and given after full disclosure
> of all relevant facts within his knowledge and information.

*Hughes*, 164 P.3d at 918 (citing Restatement (Second) of Torts § 675). Probable

cause to initiate a civil action is determined based on a totality of the circumstances

and under an objective standard from the perspective of the party initiating the

legal action. *McAtee v. Morrison & Frampton, PLLP*, 512 P.3d 235, 240 (Mont.

2021) (citing *Plouffe*, 45 P.3d at 15).

    The Complaint alleges Proof knew its trade dress was functional and its

trademark invalid when it filed the lawsuit against McGowen in federal court. The

Complaint supports this allegation with an email from Proof's legal counsel to its

CEO discussing the USPTO examiner's initial denial of Proof's trademark

application and subsequent response to the USPTO denying the Mark was a natural

consequence of the manufacturing process. The Complaint further alleges a Proof

representative contradicted this premise when he admitted during the cancellation

proceedings that the trade dress at issue was in fact derived from the manufacturing

process established by a patent Proof applied for in 2014 and the USPTO granted

in 2019. The evidence is sufficient to plausibly allege that Proof lacked probable

cause to bring a lawsuit seeking to enforce its trademark against McGowen.

### 3.  Malice

A defendant acts with malice when he or she is motivated by "a primary purpose other than that of bringing an offender to justice." *Miller v. Watkins*, 653 P.2d 126, 131 (Mont. 1982). Malice includes when a defendant "has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and . . . deliberately proceeds to act with indifference to the high probability of injury to the plaintiff." Mont. Code Ann. § 27-1-221(2). The plaintiff is not required to prove the subjective intent of the defendant to establish a prima facie case for malicious prosecution. *Plouffe*, 45 P.3d at 18. Malice may be inferred if lack of probable cause is established by the facts. *Miller*, 653 P.2d at 131.

McGowen claims Proof knew or intentionally disregarded the fact that its trademark was functional when it demanded Carbon Six and McGowen's other customers, Fierce Firearms and Primary Weapons Systems, cease and desist from selling, distributing, advertising, or promoting carbon fiber barrels purchased from McGowen. The Complaint further alleges Proof continued to act with knowledge or indifference to the high probability of injury to McGowen when it threatened legal action and ultimately filed suit against McGowen in federal court for trademark infringement. Again relying on the email from Proof's attorney to its

CEO, as well as contrary deposition testimony from one of Proof's representatives, the Complaint plausibly alleges that Proof acted with malice.

In sum, taking all facts as true and viewing the Complaint in the light most favorable to McGowen, the allegations are sufficient to state a claim for malicious prosecution. Proof's motion to dismiss Count II is denied.

### C. Tortious Interference

A claim for tortious interference with business relations or prospective economic advantage requires the plaintiff to prove: (1) an intentional and willful act; (2) calculated to cause damage to the plaintiff's business; (3) done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; that (4) results in actual damages or loss. *Wingfield v. Montana Dep't Pub. Health Human Servs.*, 463 P.3d 452, 454 (Mont. 2020) (citing *Maloney v. Home & Inv. Ctr., Inc.*, 994 P.2d 1124, 1132 (Mont. 2000)).

Montana's statute of limitations for tort actions is three years. *Walstad v. Norwest Bank*, 783 P.2d 1325, 1327 (Mont. 1989) (citing Mont. Code Ann. § 27-2-204). The limitations period begins to run when the claim or cause of action accrues or, at the latest, on the date a plaintiff discovers the facts giving rise to the cause of action. *Knight v. City of Missoula*, 827 P.2d 1270, 1273 (Mont. 1992); Mont. Code Ann. § 27-2-102(2). Under Montana law, "a claim or cause of action

accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." Mont. Code Ann. § 27-2-102(1)(a).

Relying on precedent specific to legal malpractice actions where, unlike here, the Montana Supreme Court has held that both the "discovery rule" and the "accrual rule" are statutorily binding, McGowen argues its claim did not accrue until it incurred damages.[2]  To the contrary, federal courts, applying Montana law, have consistently held that "a right of action in tort accrues upon injury." *Briese v. Montana*, No. CV-09-146-BLG-RFC, 2011 WL 338399, at *1 (D. Mont. Jan. 31, 2011) (various state tort and § 1983 claims); *Montana Pole & Treating Plant v. I.F. Laucks and Co.*, 775 F. Supp. 1339, 1348 (D. Mont. 1991) (declining to extend continuing tort rationale to negligence, products liability, and breach of warranty claims); *Buhl v. Biosearch Medical Products, Inc.*, 635 F. Supp. 956, 959 (D. Mont. 1985) (rejecting the application of the discovery rule and a theory of continuing tort in a personal injury action); *Much v. Sturm, Ruger & Co., Inc.*, 502 F. Supp. 743, 744 (D. Mont. 1980), *aff'd*, 685 F.2d 444 (9th Cir. 1982) (discussing

---

[2] "The discovery rule begins the statute of limitations upon the discovery of the negligent act. The accrual rule provides that the statute of limitations begins when all elements of a claim, including damages, have occurred." *Est. of Watkins v. Hedman, Hileman & Lacosta*, 91 P.3d 1264, 1269 (Mont. 2004) (internal citations and quotation marks omitted).

the discovery rule as applied to allegations of fraudulent concealment in a products

liability case)). Only limited exceptions to this rule have been established by

statute and by case law. *Buhl*, 635 F. Supp. at 960 (noting the discovery doctrine

has been "limited to latent injuries resulting primarily from either drug products or

medical malpractice" where, "either because of the nature of the injury or [] the

relationship between the parties, it is virtually impossible for the plaintiff to know

that he has a cause of action").

   The acts giving rise to McGowen's tortious interference claim as set forth in

the Complaint occurred in June 2016, when Proof sent cease-and-desist letters to

Carbon Six, and December 2017, when Proof commenced litigation in federal

court, accusing McGowen of infringing its trademark rights and requesting an

injunction to prevent McGowen from manufacturing, selling, and distributing its

barrels. (Doc. 1, ¶¶ 53–54). Therefore, the statute of limitations on McGowen's

tortious interference claims expired no later than December 2020. McGowen

contends the Court should apply the theory of continuing tort or equitable tolling to

allow the claim to proceed. The Court declines to do so.

### 1. Continuing Tort

   Under the continuing tort doctrine, a tort causing a temporary injury gives

rise to a new cause of action for statute of limitations purposes each time the injury

repeats. *Burley v. Burlington Northern & Santa Fe Ry. Co.*, 273 P.3d 825, 828 (Mont. 2012) (claims of nuisance and trespass); *Christian v. Atlantic Richfield Co.*, 358 P.3d 131, 150 (Mont. 2015) (claims of strict liability and negligence). The Ninth Circuit has stated the doctrine "applies where there is no single incident that can fairly or realistically be identified as the cause of significant harm." *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (finding the plaintiff's cause of action for a defamation claim accrued upon the occurrence of the tortious act) (internal quotations and citations omitted).

McGowen argues it has alleged repeating injuries—loss of sales, revenue, profits and business opportunity, loss of goodwill and loss of reputation—that "continued until, at the earliest, the Trademark Litigation was finally dismissed in August 2021." The Court disagrees. "[C]ontinuous effects are entirely different from continuous injuries." *Buhl*, 635 F. Supp. at 961. While the effects of Proof's approach to enforcing its trademark arguably continued to harm McGowen past the date it was initially injured, this does not change the fact that McGowen's tortious interference claim had accrued, and the statute of limitations period on the claim had commenced.

Finally, McGowen asserts that its allegations of a continuing tort are sufficient to defeat a motion to dismiss because "when there is conflicting evidence

as to when a cause of action accrued, the question of whether an action is barred by the statute of limitations is for the jury to decide." Here, there is no factual dispute as to when McGowen became aware of the acts giving rise to its tortious interference claim; thus, there is no question of fact for the jury. Conversely, "[t]he Montana Supreme Court has consistently addressed the application of the continuing tort doctrine as a question of law." *Briese v. Montana*, No. CV-09-146, 2010 WL 5677921, at *12 (D. Mont. July 16, 2010), *report and recommendation adopted*, No. CV-09-146-BLG-RFC, 2011 WL 338399 (D. Mont. Jan. 31, 2011) (citing *Knight*, 827 P.2d at 1277–78 and *Graveley Ranch v. Scherping*, 782 P.2d 371, 373 (Mont. 1989)); *see also Walton v. City of Bozeman*, 588 P.2d 518, 521 (Mont. 1978).

The Court concludes, as a matter of law, the continuing tort doctrine does not apply, and McGowen's tortious interference claim is time-barred.

### 2. Equitable Tolling

The Court applies the equitable tolling framework set forth in *supra* § III(A)(1) to McGowen's tortious interference claim.

In *Erickson v. Croft*, the Montana Supreme Court declined to equitably toll the statute of limitations for fraud and negligence claims against a real estate broker when the plaintiff elected to file a complaint with the Montana Board of

Realty Regulation within the two-year statute of limitations, and only upon its dismissal three years later, pursued a second claim for damages in the district court. 760 P.2d 706, 708–709 (Mont. 1988). The court reasoned that, because "the Board of Realty may only revoke or suspend a broker's license and has no power to award damages for negligence or fraud," Erickson had failed to meet the first element of equitable tolling. *Erickson*, 760 P.2d at 709. The court concluded, "the Board of Realty complaint [did] not give adequate notice of the existence of a legal claim." *Erickson*, 760 P.2d at 709.

Likewise, here, the TTAB has no power to award damages for tort liability. *Rhoades*, 504 F.3d at 1158 n.6. Further, the essential elements of a tortious interference claim plainly do not align with any of the grounds McGowen asserted in its cancellation petition. As this claim is an entirely new claim that relies on establishing an entirely new set of facts from the previous litigation, the TTAB proceeding did not give Proof adequate notice of McGowen's tortious interference claim, and thus, the claim fails to satisfy the first element of equitable tolling.

Accordingly, the Court declines to apply equitable tolling to excuse McGowen's untimely tortious interference claim. Proof's motion to dismiss Count III is granted.

## IV.   __Conclusion__

For the reasons discussed above,

**IT IS ORDERED** that Defendant's Motion to Dismiss the Complaint for

Failure to State a Claim for Relief under Rule 12(b)(6) is GRANTED as to counts I

and III, and DENIED as to Count II.

DATED this 28th day of October, 2022.

Kathleen L. DeSoto
United States Magistrate Judge